UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DONALD ESSELBORN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 1:22-cv-01456-SEB-MKK |
| HOME DEPOT U.S.A., INC., HD DEVELOPMENT OF MARYLAND, INC., | ) ) ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Donald Esselborn ("Mr. Esselborn") brought this action against Defendants Home Depot U.S.A., Inc. ("Home Depot") and HD Development of Maryland, Inc., ("HD Development") (collectively "Defendants") for personal injuries that he allegedly sustained at a Home Depot store located in Greenwood, Indiana. Defendants have moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Dkt. 38. For the reasons explicated below, Defendants' motion is **GRANTED**.

**LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit," and a dispute about a material fact is genuine when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts do not "weigh the evidence" or "determine the truth of the matter." *Austin v.*

1

*Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018) (quoting *Anderson*, 477 U.S. at 249). Rather, the court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Anderson,* 477 U.S. at 249–50). Relatedly, a party moving for summary judgment in federal court need not present any evidence affirmatively disproving the non-movant's claims: It is enough to point to the absence of evidence to support the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). When deciding whether a genuine dispute of material fact exists, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572 (7th Cir. 2021).

Where, as here, a litigant is proceeding *pro se,* the Seventh Circuit has construed summary judgment requirements a bit more leniently. *See, e.g.*, *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (reading *pro se* plaintiff's complaint and summary judgment responses "generously and in the light most favorable to her"); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (reading plaintiff's complaint and summary judgment responses "more generously, because he was a *pro se* litigant at the time of those proceedings"). Nevertheless, the law does not exempt *pro se* parties confronting summary judgment from demonstrating a genuine dispute of material fact, nor does the law require district court judges to scour the record in search of a dispute of fact on a *pro se* party's behalf. *Greer v. Bd. of Ed. of the City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001). Although *pro se* status "may excuse compliance with some of the technical rigors of summary judgment," procedural rules apply to counseled and uncounseled litigants alike and must be enforced

accordingly. *Ledford v. Hahn*, No. 1:18-cv-HAB, 2019 WL 3574570, at *2 (N.D. Ind. Aug. 6, 2019); *see Kincaid v. Vail*, 969 F.2d 594, 598 (7th Cir. 1992); *Members v. Paige*, 140 F.3d 699, 702–03 (7th Cir. 1998) (explaining that "rules apply to uncounseled litigants and must be enforced").

## BACKGROUND

We note at the outset that Mr. Esselborn's two-page handwritten response does not comport with the summary judgment procedures set forth in the Federal Rules of Civil Procedure or our Local Rules, in that he failed to assert (with accompanying evidence) any disputes of *material* fact and further failed to respond to Defendants' legal arguments. Pl.'s Resp. Br. 1–2, dkt. 41. While we view the undisputed facts in the light most favorable to the nonmoving party, we nevertheless must (and therefore do) accept "the facts as claimed and supported by admissible evidence by the movant a[s] admitted without controversy." S.D. Ind. L.R. 56-1(f)(1).

### I.   Factual Background

On July 9, 2020, Mr. Esselborn, who has worked in the construction business for "most of [his] life," visited a Home Depot retail store located in Greenwood, Indiana, to return approximately 300 to 500 pounds of merchandise comprised of two nail guns and several boxes of nails, among other items. Esselborn Dep. 22:4–25, dkt. 39. Due to a preexisting injury to his left ankle (caused by years of "wear and tear," *id.* at 20:20–24), Mr. Esselborn planned to use a store-provided motorized cart to transport the merchandise from his vehicle to the return desk inside the store. After parking his vehicle and walking approximately fifty feet to the store's entrance in search of a motorized cart, Mr. Esselborn

began to doubt that a motorized cart would "be strong enough to push 500 pounds" and chose instead a standard pushcart. *Id.* at 17:25–18:3, 26:15–20. After returning to his vehicle, Mr. Esselborn loaded the merchandise and pushed the cart approximately fifty feet back into the store. *Id.* at 18:3–6.

As a Home Depot cashier processed Mr. Esselborn's return, Mr. Esselborn removed each item from his cart and, at the cashier's direction, placed each item on a fold-up table adjacent to the return counter. According to Mr. Esselborn, there were already four or five boxes of merchandise sitting on top of the table. Although he suggested returning his merchandise to his cart, the cashier told him to "leave the stuff there" on the table. *Id.* at 28:4–8. Because that particular cash register did not contain enough cash to complete Mr. Esselborn's return transaction, the cashier stepped away to retrieve more funds from the back office. Mr. Esselborn, meanwhile, leaned on the front corner of the table, just above the leg, to relieve the pressure and discomfort he was experiencing on his left ankle. (Mr. Esselborn claims that he asked two Home Depot associates for a chair as he waited, but neither granted his request.)

The cashier soon returned. As Mr. Esselborn stood up, however, the table unexpectedly collapsed beneath him, sadly causing Mr. Esselborn to fall and suffer a concussion and a bone chip in his thumb.

In his deposition testimony, Mr. Esselborn reported that he was familiar with the fold-up table, as he himself had owned similar tables. He also characterized the folding table as light-duty, distinguishing it from heavy-duty folding tables typically used in the construction business, the latter of which were "a little stronger." *Id.* at 22:21–25. He further

4

stated that he had observed that the table did not appear to have any visible cracks or cosmetic damage.

It is undisputed that motorized carts were available, located approximately twenty-five feet from the return desk, but that Mr. Esselborn never retrieved one. *Id.* at 25:19–20. In his deposition, Mr. Esselborn admitted that he knew not to place his weight on the table; that he could have leaned on his cart rather than the table; and that he was not distracted at the time of his fall. *Id.* at 23:10–12, 27:16–19, 30:18–21, 32:6–8.

Home Depot is unaware of any customers at the Greenwood, Indiana, Home Depot store who claim that they sat on a table; that the table collapsed; and that they were injured during the five years before Plaintiff's alleged incident and after Plaintiff's alleged incident. Home Depot's Answers to Pl.'s Interrog. ¶ 5, dkt. 39.

I. **Procedural Background**

On April 12, 2022, Mr. Esselborn brought this negligence action against HD Development and Home Depot in state court. Defendants timely removed the case to federal court on the basis of diversity jurisdiction.[1] On October 18, 2023, Defendants moved for summary judgment, dkt. 38, which motion is now fully briefed and ripe for ruling.

---

[1] On August 30, 2024, the Court ordered the parties to show cause why this matter should not be remanded to the state court from which it was originally removed due to our lack of subject-matter jurisdiction. Dkt. 45. Specifically, the Court sought clarification on the evidentiary basis for the amount in controversy. Defendants' responsive brief demonstrates by a preponderance of the evidence that Defendants had a good-faith basis to believe that the amount in controversy exceeded $75,000, exclusive of interests and costs. Dkt. 46.

## DISCUSSION

A negligence claim under Indiana law requires the plaintiff to establish that: (1) the defendant owed the plaintiff a duty to conform its conduct to a standard of care; (2) the defendant breached that duty; and (3) the defendant's breach proximately caused the plaintiff's injury. *Foxworthy v. Heartland Co-Op, Inc.*, 750 N.E.2d 438, 441 (Ind. Ct. App. 2001). "Negligence 'cannot be inferred from the mere fact of an accident.'" *Pelak v. Indiana Indus. Servs., Inc.*, 831 N.E.2d 765, 769 (Ind. Ct. App. 2005) (quoting *Hale v. Cmty Hosp. of Indianapolis, Inc.*, 567 N.E.2d 842, 843 (Ind. Ct. App. 1991)). Rather, a plaintiff must support each element of his negligence claim with specific facts (or reasonable inferences drawn therefrom) to prevail. *Kincade v. MAC Corp.*, 773 N.E.2d 909, 911 (Ind. Ct. App. 2002). "When there is no genuine issue of material fact and any one of the[ ] elements [of negligence] is clearly absent, summary judgment is appropriate." *Hall v. Menard, Inc.*, No. 1:21-CV-02932-TWP-MG, 2023 WL 6139252, at *5 (S.D. Ind. Sept. 20, 2023), *dismissed,* No. 23-3028, 2023 WL 11091164 (7th Cir. Dec. 13, 2023) (citing *Colen v. Pride Vending Serv.*, 654 N.E.2d 1159, 1162 (Ind. Ct. App. 1995)).

**I.     HD Development**

Courts evaluate who has "control over a premises . . . to determine who is liable for injuries on the premises." *Pelak*, 831 N.E.2d at 769. "Only the party who controls the land can remedy . . . hazardous conditions" or otherwise "prevent others from coming onto" the land. *Harris v. Traini*, 759 N.E.2d 215, 225 (Ind. Ct. App. 2001) (internal alterations and citations omitted). In other words, "the party in control of the land has the exclusive ability to prevent an injury from occurring." *Id.* (citation omitted). Hence, if a defendant exercises

6

no possession or control of the premises at issue, then it owes no duty to an injured plaintiff. *See Reed v. Beachy Const. Corp.*, 781 N.E.2d 1145, 1148 (Ind. Ct. App. 2002).

Here, the undisputed record evidence establishes that HD Development "does not operate, maintain, or control the store or the property," nor does it have the "responsibility to maintain, repair, or inspect" the store. Ingram Aff. ¶¶ 3–4, dkt. 39 (Affidavit of Assistant Secretary for HD Development Stacy Ingram). HD Development, therefore, owed no duty to Mr. Esselborn and is entitled to summary judgment accordingly.

## II.    Home Depot

"The status of a person who comes onto land is key in determining the duty a landowner owes to that person." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1088 (7th Cir. 2018). Here, when he fell, Mr. Esselborn was a Home Depot customer, meaning that he was a "business invitee" who was "invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Id.* (quoting *Burrell v. Meads*, 569 N.E.2d 637, 642 (Ind. 1991)). Home Depot, accordingly, owed Mr. Esselborn "the highest duty of care": the duty to "exercise reasonable care for the invitee's protection while he is on the premises." *Christmas v. Kindred Nursing Ctrs. Ltd. P'ship*, 952 N.E.2d 872, 880 (Ind. Ct. App. 2011).

Under Indiana law, landowners may be liable for physical harm caused to their invitees by a condition on the land if, but only if, they (a) know or by exercise of reasonable care would discover a condition that involves an unreasonable risk of harm; (b) should expect that their invitees will not discover or realize the danger or will fail to protect themselves against it; and (c) fail to exercise reasonable care to protect them against the danger.

7

*Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012). All three "preconditions" must exist "before any liability may attach." *Harradon v. Schlamadinger*, 913 N.E.2d 297, 301 (Ind. Ct. App. 2009).

Home Depot contends that Mr. Esselborn cannot establish the first and second elements. As explained below, we resolve Defendants' summary judgment motion on the first element requiring that Home Depot have "actual or constructive knowledge of a condition on the premises that involves an unreasonable risk of harm to invitees" and therefore do not reach the second element. *Pfenning v. Lineman*, 947 N.E.2d 392, 406 (Ind. 2011).

Ordinary household items typically do not present an unreasonable risk of harm and thus do not constitute a dangerous condition for purposes of imposing liability. *See Harradon*, 913 N.E.2d at 301 (sofa not a dangerous condition); *e.g.*, *B.F. v. Buckle, Inc.*, No. 3:13-CV-00222-RLY, 2015 WL 846522, at *4 (S.D. Ind. Feb. 26, 2015) (clothes rack and hangers are "ordinary household items" that do not "present such foreseeable danger as to demand special precautions"). Home Depot argues, and we agree, that the folding table did not create a dangerous condition on Home Depot's premises such that Mr. Esselborn was exposed to an unreasonable risk of harm.

By his own admission, Mr. Esselborn was familiar with and even owned similar types of folding tables. He was further able to distinguish the light-duty folding table at Home Depot from heavy-duty tables used in his construction business, and, as such, knew that the light-duty table could not support his weight. There is no evidence that the table was either cracked or damaged before Mr. Esselborn's accident. Home Depot also asserts (and Mr. Esselborn does not contest) that there have been no reported accidents within the

8

past five years involving a customer who was injured by having sat on a table that collapsed under his or her weight. On these undisputed facts, we have little difficulty concluding that the table did not create a dangerous condition such that Home Depot can be liable to Mr. Esselborn.

Mr. Esselborn's sole responsive argument is that he asked for a chair from two different Home Depot associates, each of whom, according to Mr. Esselborn, denied his requests. He further claims that Home Depot is withholding security footage that would prove that these interactions took place. Although such "evidence would tend to show that [Home Depot] had constructive knowledge of the condition," it would not affect our bottom-line conclusion that the table did not create a dangerous condition. *B.F.*, 2015 WL 846522, at *4.

Under the designated and undisputed evidence before us, and as a matter of law, we conclude that the folding table did not create a dangerous condition on Home Depot's property. Because Mr. Esselborn has offered no persuasive response nor adduced any contradicting evidence, Home Depot is entitled to summary judgment.[2]

---

[2] Even if the table did, *arguendo*, constitute a dangerous condition, the undisputed evidence demonstrates that Mr. Esselborn was fully aware that the table could not support his weight. Home Depot, therefore, could not have anticipated that Mr. Esselborn would fail to appreciate whatever dangers might have been inherent in the table's ordinary use. Consequently, Mr. Esselborn has not raised a triable issue of fact with regard to the second element of premises liability (i.e., that the invitee would fail to discover or protect against the hazardous condition). *Rodefer v. Hill's Pet Nutrition, Inc.*, No. IP 01-123-C H/K, 2003 WL 23096486, at *8 (S.D. Ind. Nov. 7, 2003).

## CONCLUSION

Defendants' Motion for Summary Judgment is **GRANTED**. Dkt. 38. Final judgment shall enter accordingly.

IT IS SO ORDERED.

Date: 9/17/2024

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DONALD ESSELBORN
7451 S 500 West
Trafalgar, IN 46181

Eric C. Papier
Eric C. Papier
ecp@pg-lawoffice.com

Jonathan R. Sichtermann
Parsky & Galloway, LLC
jrs@pg-lawoffice.com